Kevin H. Theriot*
Arizona Bar No. 030446
ktheriot@ADFlegal.org
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th St.
Scottsdale, Arizona 85260
480-444-0020
480-444-0028 Fax

Denise M. Harle*
Georgia Bar No. 176758
dharle@ADFlegal.org
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road NE, Suite D-1100
Lawrenceville, Georgia 30043
(770) 339-0774
(770) 339-6744 Fax

Christiana Holcomb
California Bar No. 277427
cholcomb@ADFlegal.org
**ALLIANCE DEFENDING FREEDOM**
440 First Street NW, Suite 600
Washington, DC 20001
202-393-8690
202-347-3622 Fax

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RIGHT TO LIFE OF CENTRAL CALIFORNIA,** | |
| Plaintiff, | |
| v. | Case No. _____ |
| **ROB BONTA**, in his official capacity as Attorney General of the State of California, | **VERIFIED COMPLAINT** |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

1.      This case is a pre-enforcement federal civil rights action challenging the State of California's attempt to unconstitutionally restrict speech based on content and viewpoint in public fora, by creating floating 30-foot bubble zones around persons within 100 feet of and seeking to enter or exit any facility that provides any type of vaccine.

2.      As a result of SB 742, Right to Life of Central California's ("Right to Life") speech is severely restricted on the public sidewalk and street outside its own building—and even on its own parking lot—limiting its ability to peaceably offer the charitable services it provides to women in need.

3.      SB 742 exempts "lawful picketing arising out of a labor dispute."

4.      Under SB 742, any Right to Life staff member or volunteer who moves toward another person to engage in peaceful conversation, display a sign, or hand them literature on a large swath of public—and even private—property violates the law, unless they somehow first obtain "consent" to speak to that person.

5.      To stop the imminent irreparable harm to its constitutional rights, Right to Life asks this Court to enjoin enforcement of SB 742 and to declare it unconstitutional, so that Right to Life may freely speak its beliefs on public property and freely serve the women who may wish to benefit from its charitable services.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over these federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

Verified Complaint

7.      This Court has authority to issue the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, the requested injunctive relief under 28 U.S.C. § 1343, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

8.      Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because all events giving rise to the claims detailed here occurred within the Eastern District of California and Defendant resides in the Eastern District of California.

## PLAINTIFFS

9.      Plaintiff Right to Life of Central California is a 501(c)(3) non-profit entity organized under the laws of the State of California, with a principal place of business at 1742 E. Griffith Way, Fresno, CA 93726.

## DEFENDANTS

10.      Defendant Rob Bonta is a citizen of California and the Attorney General of California. His authority is delegated to him by Article V, section 13 of the California Constitution.  Bonta is sued in his official capacity as California Attorney General.  He is authorized to enforce SB 742.

## FACTUAL BACKGROUND

**Right to Life's Beliefs and Charitable Services**

11.      Right to Life is a nonprofit organization serving women facing unplanned pregnancies or suffering the grief of abortion by providing outreach, material support, educational resources, medical care, and counseling.

12.      Right to Life's mission is to (i) engage its community by presenting the pro-life position with clarity and compassion, (ii) equip advocates to defend the sanctity of all human life through effective tools and training, and (iii) embrace individuals facing an unplanned pregnancy and those hurt by abortion.

13.     Right to Life's sincere belief is that every human life is valuable and worthy of protection, from conception to natural death.

14.     All of Right to Life's outreach efforts are designed to further its charitable mission to engage the community by presenting pro-life messages with clarity and compassion, and to embrace individuals facing an unplanned pregnancy and those hurt by abortion.

15.     Although Right to Life works with people of various faiths or with no specific religious identification, Right to Life encourages prayer among its staff and volunteers for women considering abortion and for their babies.

16.     Right to Life's employees and many of its volunteers are motivated by the biblical belief that God creates each human being in their mother's womb.

17.     Right to Life's employees and many of its volunteers are motivated by the biblical belief that no human being should intentionally take an innocent life that God has created.

18.     Right to Life offers a variety of resources to those it serves, directly and through collaborations with several local charitable organizations.

19.     Through its collaborations and community partnerships, Right to Life offers women pregnancy tests, ultrasounds, food, clothing, housing, parenting classes, pregnancy counseling, adoption and foster care options, spiritual support, and job and life skills training.

20.     Right to Life also provides women with baby clothes, car seats, baby toys, diapers, formula, strollers, and other baby supplies.

21.     Right to Life reaches the greater Fresno community through a weekly pro-life news program called "Right to Life Radio," which airs Saturday mornings on Powertalk 96.7 FM.

22.     Right to Life also hosts a YouTube Channel with educational videos and informational resources about the sanctity of human life.

Verified Complaint

23.     Right to Life's website links to all of the above resources and also includes a news blog with extensive education on abortion and the human right to life.

24.     Right to Life hosts community events, including a Golf for Life tournament and annual Christmas Dinner & Auction, to raise awareness in the community about right-to-life issues and to raise funds to support its charitable services.

25.     Right to Life also makes educational presentations on the sanctity of human life at local schools and churches.

26.     Right to Life's primary means of outreach to women considering abortion is through its Outreach Center located at 616 N. Fulton Street, Fresno, California 93728.

27.     Right to Life's Outreach Center is the base of operations for its sidewalk advocacy work, as well as headquarters for its volunteer efforts and bi-annual 40 Days for Life campaign.

28.     Right to Life's Outreach Center is located next to Planned Parenthood Mar Monte's main Fresno abortion clinic located at 650 N Fulton St, Fresno, California 93728 ("Planned Parenthood Fulton").

29.     Right to Life's outreach to women considering abortion primarily occurs through sidewalk advocacy on the public walkways in front of the Outreach Center, and between the Outreach Center and Planned Parenthood Fulton.

30.     Right to Life's outreach involves speaking kindly and peacefully with others at a normal conversational distance, to share its free resources and support services.

31.     Right to Life's outreach also includes displaying signs and offering informational leaflets and print materials while standing on the public sidewalks and streets in front of its Outreach Center and Planned Parenthood Fulton.

32.     The Outreach Center's parking lot is adjacent to Planned Parenthood Fulton's parking lot.

33.     The sidewalk in front of the Outreach Center is contiguous with the sidewalk in front of Planned Parenthood Fulton.

34.     Right to Life has rented the Outreach Center since September 2019.

35.     The Outreach Center is staffed with two employees who work a total 24 hours a week, as well as many Right to Life volunteers who offer sidewalk advocacy and counseling between the Outreach Center and Planned Parenthood Fulton.

36.     Right to Life's staff and volunteers are trained to be peaceful and positive in all their interactions with others.

37.     Right to Life's training materials prohibit staff and volunteers from civil disobedience and require all staff and volunteers to be law-abiding.

38.     Right to Life has a Statement of Peace that all volunteers sign, agreeing to be peaceful in their advocacy.

39.     Right to Life keeps its advocacy signs simple and positive, with messages like "Choose Life," "Stand for Life," "Pray to End Abortion," "Pro-Woman, Pro-Child, Pro-Life," and "God said: Before I formed you in the womb, I knew you."

40.     Right to Life staff and volunteers stand and walk with their signs on the public sidewalks or near the edge of the Outreach Center's parking lot, always within 100 feet of Planned Parenthood Fulton's entrance.

41.     Right to Life staff and volunteers, when engaging in their advocacy, are often within 30 feet of vehicle occupants entering and exiting Planned Parenthood Fulton's parking lot.

6

42.     Right to Life staff and volunteers, when engaging in their advocacy, are often within 30 feet of pedestrians walking from the nearby bus stop to Planned Parenthood Fulton.

43.     Right to Life staff and volunteers often approach individuals arriving at Planned Parenthood Fulton, either in vehicles or on foot, and attempt to engage with them at a normal conversational distance, in order to offer print materials and to explain the help and support that Right to Life can provide.

44.     30 feet is not a normal conversational distance.

45.     When a Right to Life employee or volunteer invites a person entering Planned Parenthood Fulton to have a conversation, and that person agrees, they often continue the conversation inside the Outreach Center.

46.     The Outreach Center contains written materials and resources on how women can obtain material, medical, emotional, spiritual, and other support during their pregnancy and beyond.

47.     The Outreach Center also contains a private sitting area with a couch, where women can have coffee and conversation with Right to Life's staff and volunteers, to discuss their needs, questions, and concerns.

48.     During 40 Days for Life, a biannual event, Right to Life increases its outreach and presence, with between 1 and 10 sidewalk advocates and counselors serving during any given shift.

49.     This year, the 40 Days for Life fall campaign runs September 22 through October 31, 2021.

50.     40 Days for Life is a coordinated grassroots movement to pray for an end to abortion and hold around-the-clock prayer vigils outside abortion facilities.

51.     When recruiting individuals to volunteer as sidewalk advocates, Right to Life invites them to pray with and for the people visiting Planned Parenthood Fulton.

7

52. Several women initially planning to visit Planned Parenthood Fulton for an abortion have accepted Right to Life's invitation to talk in the Outreach Center and have ultimately chosen to continue their pregnancies and choose life for their babies.

53. Right to Life hosts baby showers for these mothers and their babies.

54. Right to Life recently threw a birthday party at its Outreach Center to celebrate one of these babies' first birthday.

55. Right to Life also worked with another local organization to raise a scholarship for the baby.

SB 742's Speech Restriction and its Effect

56. SB 742, enrolled in the California Legislature on September 10, 2021, went into effect on October 8, 2021, when signed by Governor Newsom.

57. SB 742 is codified at California Penal Code section 594.39.

58. SB 742 bans certain free-speech activities when a speaker is within 30 feet of another person and that other person is "in a public way or on a sidewalk area," Cal. Penal Code § 594.39(c)(1) (2021), and "within 100 feet of the entrance or exit of a vaccination site and is seeking to enter or exit a vaccination site," id. § 594.39(a).

59. SB 742's speech restriction also specifically bans speech to "vehicle occupant[s]" in the same locations.

60. SB 742 defines as illegal "harassing" "knowingly approaching" such a person "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with" that person "without consent."

61. SB 742 does not specify that the speaker must also be on public property for the ban to apply, but instead as written facially bans speech even when the speaker is on her own private

8

Verified Complaint

property, if the person she is speaking to is less than 30 feet away, is on a sidewalk or public way, and is within 100 feet of a vaccination site, appearing to enter or exit.

62.     Of SB 742's twelve declarations and findings, six specifically reference the COVID-19 pandemic.  See S.B. 742, § 1(a)(1)–(6), 2021–2022 Leg., Reg. Sess. (Cal. 2021).

63.     SB 742's declarations then turn to "other infectious diseases, including measles, chickenpox, and tuberculosis" that are "spread through airborne transmission," id. § 1(a)(7), and "[f]uture unknown infectious diseases [that] also likely will spread through airborne transmission," id. § 1(a)(8) (emphasis supplied).

64.     SB 742 concludes by identifying itself as an "urgency statute necessary . . . to ensure public peace and safety during the process of distributing vaccinations during the ongoing COVID-19 pandemic and public health crisis[.]"  Id. § 4.

65.     SB 742 defines "Vaccination site" as a "physical location where vaccination services are provided, including, but not limited to, a hospital, physician's office, clinic, or any retail space or pop-up location made available for vaccination services."  Cal. Penal Code. § 594.39(c)(6).

66.     "Vaccination site" is not limited to locations providing COVID-19 vaccinations.

67.     SB 742's definition of "Vaccination site" creates buffer zones outside of thousands of major retail locations throughout California, including Walgreens, Walmart, Target, CVS, Albertsons, Rite Aid, Costco, Sam's Club, Ralphs, Vons, and Safeway stores.

68.     SB 742's findings state that "a 30-foot buffer zone is necessary to protect the health of Californians trying to access vaccination sites."  S.B. 742, § 1(a)(11).

69.     SB 742 in its findings or legislative history does not provide reliable facts indicating that infectious airborne diseases can spread across a 30-foot span outdoors.

Verified Complaint

70.     SB 742 in its findings or legislative history does not indicate why airborne disease transmission outside a vaccination site would be more likely than airborne disease transmission in other outdoor public places.

71.     SB 742 in its findings or legislative history does not indicate why "displaying a sign" could contribute to airborne disease transmission.

72.     SB 742 excludes from the speech ban "engag[ing] in lawful picketing arising out of a labor dispute."  Cal. Penal Code § 594.39(d).

73.     SB 742 in its findings or legislative history does not indicate why airborne disease transmission outside a vaccination site would be less likely based on the content of the speech being a labor dispute.

74.     This exclusion further undercuts California's professed need to protect all sites providing any vaccine with a speech zone of 100 feet.

75.     SB 742's legislative findings and declarations state that "[p]rotestors at vaccination sites continue to impede and delay Californians' ability to access vaccination sites."  S.B. 742, § 1(a)(12).

76.     California made no attempt to address the alleged problem with access to vaccination sites prior to radically restricting speech through SB 742.

77.     Planned Parenthood Fulton provides vaccinations for human papillomavirus (HPV).

78.     Planned Parenthood Fulton does not provide COVID-19 vaccines.

79.     SB 742's findings state that "the United States Supreme Court previously upheld a buffer zone protecting patients [sic] right to access healthcare services," ignoring that the U.S. Supreme Court specifically noted that the zone upheld was 8-feet, which could be a "normal conversational distance," unlike the 30-foot zone in SB 742.  S.B. 742, § 1(a)(10).

10

80.     SB 742's findings ignore that the United States Supreme Court more recently struck down a 35-foot buffer zone outside healthcare facilities because it did not allow for a normal conversational distance.

81.     Violation of SB 742 is punishable by a fine of up to $1,000, up to six months imprisonment in county jail, or both.  See Cal. Penal Code § 594.39(b).

## ALLEGATIONS OF LAW

82.     At all times relevant to this Complaint, each and all of the acts alleged here are attributable to Defendant, who acts under color of a statute, regulation, custom, act, or usage of the State of California.

83.     Right to Life currently suffers imminent and irreparable harm because of Defendant's actions enforcing SB 742, which violates Right to Life's constitutional rights.

84.     Right to Life has no adequate or speedy remedy at law for the loss of its constitutional rights.

85.     Unless SB 742 is enjoined, Right to Life will continue to suffer irreparable injury.

## FIRST CAUSE OF ACTION
## Violation of First Amendment Right to Freedom of Speech

86.     Right to Life repeats and realleges each allegation contained in paragraphs 1–85 of this Complaint.

87.     The First Amendment's Free Speech Clause protects Right to Life's rights to speak, to publish speech, to be free from content and viewpoint discrimination, to be free from vague laws allowing unbridled discretion, and to be free from overbroad laws.

88.     SB 742 subjects Right to Life's employees and volunteers to fines and imprisonment for engaging in free speech or free expression in a public forum and on private property.

11

89.     SB 742 subjects Right to Life's employees and volunteers to fines and imprisonment for engaging in free speech or free expression on matters of public importance.

90.     If not for SB 742, Right to Life and its agents, including its staff and volunteers, would freely engage in protected speech, without hesitancy or fear of government punishment.

91.     Instead, Right to Life is unable to freely carry signs on public sidewalks and private property without fear of government penalty.

92.     Because of SB 742, Right to Life is unable to freely initiate conversations on public sidewalks and its own private property without fear of government penalty.

93.     Because of SB 742, Right to Life is unable to freely offer leaflets and print materials or display signs on public sidewalks without fear of government penalty.

94.     Right to Life has not and will not engage in certain protected speech, such as walking toward individuals on a public sidewalk while carrying a sign, when that individual is within 30 feet and appears to be entering or exiting Planned Parenthood Fulton, to avoid violating SB 742 and California's unconstitutional application of it, and to avoid incurring the penalties for violating that law.

95.     Right to Life is currently suffering ongoing harm because of SB 742.

96.     Because SB 742 infringes rights under the Free Speech Clause, its provisions chill, deter, and restrict Right to Life.

97.     Further, vague and overbroad language included in SB 742 bans free speech even when the speaker is standing on her own private property.

98.     SB 742 constitutes viewpoint discrimination because it is motivated by hostility toward anti-vaccination opinions and beliefs and does not apply to views from a labor perspective.

Verified Complaint

99.     Because the Act violates free-speech principles for all the reasons stated above, it must further a compelling interest in a narrowly tailored way.

100.     Banning Right to Life's speech does not serve any legitimate, rational, substantial, or compelling government interest in a narrowly tailored way.

101.     California has alternative, less restrictive means to achieve any legitimate interest it may possess rather than forcing Right to Life to abandon its free-speech rights, such as adopting more modest and ordinary social-distancing requirements of 6 feet or exempting protected speech.

102.     Accordingly, facially and as applied to Right to Life, SB 742 violates the First Amendment right to free speech.

**SECOND CAUSE OF ACTION**<br>**<u>Violation of Plaintiffs' First Amendment Right to Free Exercise of Religion</u>**

103.     Right to Life repeats and realleges each allegation contained in paragraphs 1–102 of this Complaint.

104.     The First Amendment to the United States Constitution protects Right to Life's rights to operate, publish, and speak in accordance with its religious beliefs.

105.     The First Amendment protects Right to Life's right to believe and profess the religious doctrines of its choice.

106.     The First Amendment protects Right to Life's right to communicate its beliefs in the manner and with the words it chooses.

107.     The First Amendment protects Right to Life's right to communicate its beliefs on public sidewalks and ways, including at a normal, conversational distance.

108.     The First Amendment protects Right to Life's right to communicate its beliefs on its own private property.

Verified Complaint

109.    The First Amendment prohibits the government from interfering with these rights by punishing the profession of a religious belief or imposing special disabilities on the basis of stating disfavored religious views.

110.    Right to Life has sincerely held religious beliefs that motivate it to operate its organization in accordance with biblical teachings affirming the value and dignity of human life at every stage, from the moment of conception, and to teach and explain those beliefs to the public and those Right to Life serves.

111.    Right to Life's religious beliefs are burdened when it is forced to remain silent or to refrain from approaching those it wishes to serve with a message of hope and life, and thus stopped from freely informing others about its religious beliefs and its free charitable services.

112.    Right to Life's religious beliefs are also burdened if it is inhibited from freely informing others about its religious beliefs about abortion and its free services because of the chilling effect of SB 742's threatened punishment.

113.    SB 742 is not neutral or generally applicable because it creates a categorical exemption for speech regarding labor disputes.

114.    SB 742 treats religious speech worse than similarly situated secular speech regarding labor disputes and subjects religious expression to punishment while exempting similar secular expression.

115.    SB 742's speech restrictions interfere with Right to Life's religious speech without any substantial evidence of a compelling interest.

116.    SB 742 punishes Right to Life's profession of its religious beliefs.

117.    SB 742 therefore imposes special disabilities on Right to Life due to its profession of religious beliefs.

118.    SB 742 punishes Right to Life employees and volunteers for engaging in religiously motivated expressive activity by subjecting them to fines of up to $1,000 per violation, imprisonment for up to six months per violation, or both.

119.    SB 742 burdens Right to Life's sincerely held religious beliefs by banning, deterring, and preventing its religiously motivated exercise and speech.

120.    SB 742 also violates Right to Life's free-exercise rights under the hybrid-rights doctrine because it implicates free-exercise rights in conjunction with other constitutional protections, like the rights to free speech, expressive association, due process, and equal protection.

121.    California has not pursued measures less restrictive of First Amendment activity before imposing SB 742's speech regulations.

122.    SB 742 does not serve any compelling, significant, legitimate, or even valid interests in a narrowly tailored way.

123.    Accordingly, facially and as applied to Right to Life, SB 742 violates the First Amendment right to free exercise.

### THIRD CAUSE OF ACTION
### Violation of Fourteenth Amendment Right to Equal Protection

124.    Right to Life repeats and realleges each allegation contained in paragraphs 1–123 of this Complaint.

125.    The Fourteenth Amendment to the United States Constitution guarantees Right to Life equal protection of the laws, which prohibits Defendant from treating Right to Life differently than similarly situated persons or entities.

126.    The government may not treat some entities disparately as compared to similarly situated entities, based on a fundamental right.

15

127.    SB 742 exempts speakers who are displaying signs or engaging in other expressive activity within 30 feet of a person approaching within 100 feet of a vaccination site, if the content of their speech concerns a labor dispute; but it bans Right to Life from displaying signs or engaging in other expressive activity within 30 feet of a person approaching within 100 feet of a vaccination site, when the content of their speech is regarding the sanctity of human life or offers of free social services.

128.    SB 742 lacks a rational or compelling state interest for such disparate treatment of Right to Life and other non-labor speakers because the content of speech or expressive activity is not relevant to airborne disease transmission.

129.    SB 742 exempts speakers who are displaying signs or engaging in other expressive activity within 30 feet of a person on a sidewalk or public way approaching within 100 feet of any physical location that does not provide vaccination services; but it bans Right to Life from displaying signs or engaging in other expressive activity within 30 feet of a person on a sidewalk or public way approaching within 100 feet of Planned Parenthood Fulton.

130.    SB 742 lacks a rational or compelling state interest for such disparate treatment of Right to Life and other speakers engaging in expression within 100 feet of vaccination sites because the nature of the activity inside a building is not relevant to airborne disease transmission.

131.    SB 742's disparate treatment of Right to Life and other non-labor speakers is not narrowly tailored because banning Right to Life and non-labor speakers from free expressive activity on public property within 30 feet of other individuals is not the least restrictive means of advancing any legitimate interest the government may have.

Verified Complaint

132.    Defendant's implementation and enforcement of SB 742 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, facially and as applied to Right to Life.

## FOURTH CAUSE OF ACTION
### Violation of Fourteenth Amendment Right to Procedural Due Process

133.    Right to Life repeats and realleges each allegation contained in paragraphs 1–132 of this Complaint.

134.    The Due Process Clause of the Fourteenth Amendment guarantees persons the right to due process of law, which includes the right to be free from vague guidelines granting officials unbridled discretion.

135.    Right to Life's Fourteenth Amendment right to due process is violated in both the vague language SB 742 uses as well as the lack of procedural safeguards included in the enforcement process.

136.    SB 742 uses undefined and overbroad terms and phrases such as "knowingly approach" and "without consent."

137.    SB 742 is vague, facially and as applied, because on its face it outlaws certain communication even when a speaker is on her own private property.

138.    SB 742's open-ended vagueness in the phrases "knowingly approach" and "without consent" exacerbate the Act's First Amendment problems because its vague terms grant unbridled discretion to Attorney General Bonta to ban or punish speech the government opposes.

139.    These provisions use vague and undefined terms and guidelines, granting officials unbridled discretion.  SB 742 is therefore vague on its face and as applied to Right to Life and does not provide it fair notice.

140.    The Attorney General has the power to investigate, apply, and enforce SB 742.

141.    SB 742 creates a new crime, upon which a speaker is punished whenever the Attorney General or his designees with authority to enforce SB 742, in their sole discretion, determine the law has been violated.

142.    As such, SB 742 is devoid of procedural safeguards to protect any speaker subject to it.

143.    SB 742 does not serve any compelling, significant, legitimate, or even valid interest in a narrowly tailored way.

144.    Accordingly, facially and as applied to Right to Life, SB 742's vague language and lack of procedural safeguards violate the Fourteenth Amendment right to due process under the laws.

**FIFTH CAUSE OF ACTION**
**Violation of First Amendment Right to Expressive Association**

145.    Right to Life repeats and realleges each allegation contained in paragraphs 1–144 of this Complaint.

146.    The First Amendment protects the right of people to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

147.    The First Amendment prohibits the government from banning people from associating with others to express messages.

148.    Right to Life is an expressive association because people with likeminded beliefs, including those on staff and volunteers in its organization, are joining together to assist and serve women in the Fresno area and to express their beliefs about God's creation of life, pregnancy, and motherhood.

149.    Banning Right to Life's volunteers and staff from speaking to others on public property, and even some private property, from a normal conversational distance would undermine its ability to advocate the position that women deserve dignity, respect, truth, encouragement, and support when seeking information and counsel about their pregnancy or a potential pregnancy.

150.    Banning Right to Life's volunteers and staff from speaking to others on public property, and even some private property, from a normal conversational distance causes Right to Life to limit its expressive association going forward.

151.    Subjecting Right to Life to SB 742's vague and overbroad speech restriction would also undermine its ability to advocate its beliefs-based position and its free association with women it seeks to associate with.

152.    Right to Life likewise engages in expressive association when its staff and volunteers partner with each other and partner with women seeking information and counsel, teaching them certain truths about human life and the availability of social support services.

153.    In offering free services to those who seek the services, Right to Life expressively associates with those women for the purpose of communicating desirable messages to those individuals.

154.    One of the reasons that Right to Life associates with women is to express messages consistent with its religious beliefs about God's creation of life and God's ability to offer hope, peace, and love in all circumstances.

155.    Right to Life uses real-life stories of care (anonymously or when permission has been given) that it facilitated, to promote its view of God's design of babies in the womb and of motherhood.

156.    Right to Life uses these real-life stories in various ways, such as in its newsletter, in speaking events, in its blog, on its radio program, on its website, and on social media, to encourage others to adopt these beliefs regarding the sanctity of human life.

157.    When Right to Life assists a woman with considering the baby in her womb and becoming equipped to welcome her baby into the world, it associates with that individual, who herself

19

becomes an ongoing, living example who communicates to friends, family, co-workers, and others regarding Right to Life's views and support services.

158.   It is common for people to learn about the services that Right to Life provides from women who have used its services.

159.   When people learn that Right to Life assisted a woman facing an unplanned pregnancy, people believe that the services provided were consistent with Right to Life's beliefs.

160.   By banning Right to Life from engaging in expressive association with the women it serves and seeks to serve, California restricts Right to Life from expressively associating in a way that effectively communicates Right to Life's desired messages to women in need and to the community.

161.   SB 742 harms Right to Life's ability to promote its beliefs by inhibiting it from associating with others that help promote its messages, because those individuals would be averse to having to shout at people from more than 30 feet away.

162.   SB 742 harms Right to Life's ability to promote its beliefs by inhibiting it from associating with others that help promote its messages, because those individuals would be fearful of punishment for violating SB 742 while engaging in their expressive activity.

163.   SB 742 harms Right to Life's ability to promote its beliefs by inhibiting it from associating with others that help promote its messages, because SB 742 on its face appears to ban Right to Life from free speech even on its own private property.

164.   Because SB 742 infringes on Right to Life's expressive association rights, it must further a compelling interest in a narrowly tailored way.

165.   Facially and as applied to Right to Life, SB 742 does not further any legitimate, rational, substantial, or compelling interest by preventing Right to Life from expressively associating

20

with and thereby conveying messages to the women it serves and to the community consistent with Right to Life's mission and beliefs.

166.    California has alternative, less restrictive means to achieve any legitimate interest it may possess other than forcing Right to Life to abandon its freedom of expressive association.

167.    Accordingly, facially and as applied to Right to Life, SB 742 violates the right to expressive association protected by the First Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Right to Life respectfully requests that this Court enter judgment against Defendant and provide Right to Life the following relief:

(A)    A temporary restraining order, preliminary injunction, and permanent injunction to stop the Defendant and any person acting in concert with him from enforcing SB 742 (i) facially against any speaker, and (ii) as applied to the constitutionally protected activities of Right to Life and its agents, including its right to engage in peaceful advocacy and association on public and private property;

(B)    A declaration that SB 742 violates the United States Constitution's Free Exercise of Religion, Freedom of Speech, Free Association, Due Process, and Equal Protection Clauses, facially and as applied to the constitutionally protected activities of Right to Life and its agents, including its right to freely describe its mission and services in public;

(C)    That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter in controversy here so that these declarations shall have the force and effect of a final judgment;

(D)    That this Court retain jurisdiction of this matter for the purpose of enforcing its orders and that it adjudge, decree, and declare the rights and other legal relations of the parties to the subject

21

matter here in controversy so that these declarations shall have the force and effect of final judgment;

(E)       That this Court award Right to Life costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988; and

That this Court grant any other relief that it deems equitable and just in the circumstances.

Respectfully submitted this 12th day of October, 2021,

By: */s/ Christiana Holcomb*
KEVIN H. THERIOT*
Arizona Bar No. 030446
ktheriot@ADFlegal.org
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th St.
Scottsdale, Arizona 85260
480-444-0020
480-444-0028 Fax

DENISE M. HARLE*
Georgia Bar No. 176758
dharle@ADFlegal.org
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road NE, Ste. D-1100
Lawrenceville, Georgia 30043
(770) 339-0774
(770) 339-6744 Fax

CHRISTIANA HOLCOMB
California Bar No. 277427
cholcomb@ADFlegal.org
**ALLIANCE DEFENDING FREEDOM**
440 First Street NW, Suite 600
Washington, DC 20001
202-393-8690
202-347-3622 Fax

*Attorneys for Plaintiff*

*\*Pro Hac Vice filed concurrently*

22

**DECLARATION UNDER PENALTY OF PERJURY**

I, JOHN GERARDI, a citizen of the United States and a resident of the State of California, hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 11th day of October, 2021.

JOHN GERARDI
RIGHT TO LIFE OF CENTRAL CALIFORNIA

22