1    ROB BONTA, State Bar No. 202668
     Attorney General of California
2    ANTHONY HAKL, State Bar No. 197335
     Supervising Deputy Attorney General
3    RITA BOSWORTH, State Bar No. 234964
     Deputy Attorney General
4    KRISTIN A. LISKA, State Bar No. 315994
     Deputy Attorney General
5      455 Golden Gate Avenue, Suite 11000
       San Francisco, CA  94102-7004
6      Telephone:  (415) 510-3916
       Fax:  (415) 703-5480
7      E-mail:  Kristin.Liska@doj.ca.gov
     *Attorneys for Defendant*
8    *Attorney General Rob Bonta*

9                     IN THE UNITED STATES DISTRICT COURT

10                   FOR THE EASTERN DISTRICT OF CALIFORNIA

11                             FRESNO DIVISION

12

13   **RIGHT TO LIFE OF CENTRAL**          1:21-cv-01512-DAD-SAB
     **CALIFORNIA,**
14
                              Plaintiff,
15                                         **OPPOSITION TO PLAINTIFF'S**
                                           **MOTION FOR A PRELIMINARY**
16        v.                               **INJUNCTION**

17   **ROB BONTA, in his official capacity as**   Date:        December 21, 2021
     **Attorney General of the State of California,**   Dept:        5, 7th Floor
18                                         Judge:       The Honorable Dale A. Drozd
                              Defendant.    Trial Date:  Not scheduled
19                                         Action Filed:  10/13/2021

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................ 1

Background ......................................................................................................................... 1

    I.    Statutory Background................................................................................... 1

    II.   Factual and Procedural Background ........................................................... 3

Legal Standard ................................................................................................................... 4

Argument ........................................................................................................................... 4

    I.    Plaintiff Is Unlikely to Succeed on the Merits ......................................... 5

        A.    The Scope of SB 742 ...................................................................... 5

        B.    Plaintiff Has Not Demonstrated a Likelihood of Success on Its Free Speech Claims ............................................................................ 6

            1.    SB 742 Is Content Neutral ............................................. 7

            2.    SB 742 Is a Valid Time, Place, and Manner Restriction ............. 10

        C.    Plaintiff Has Not Demonstrated a Likelihood of Success on Its Free Exercise Claim ............................................................................... 13

        D.    Plaintiff Has Not Demonstrated a Likelihood of Success on Its Equal Protection Claim ................................................................... 14

        E.    Plaintiff Has Not Demonstrated a Likelihood of Success on Its Due Process Claim............................................................................... 14

        F.    Plaintiff Has Not Demonstrated a Likelihood of Success on Its Association Claim ........................................................................... 15

    II.   A Preliminary Injunction Is Not in the Public Interest ........................... 16

    III.  While No Order Is Warranted, Any Relief Should Be Narrow ............................ 17

Conclusion ....................................................................................................................... 18

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Advocate Health Care Network v. Stapleton*

5
    137 S. Ct. 1652 (2017) ............................................................................... 9

6

*All. for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ..................................................................... 4

7

*American Civil Liberties Union of Nevada v. City of Los Angeles*

8
    466 F.3d 784 (9th Cir. 2006) ....................................................................... 9

9

*Boy Scouts of America v. Dale*
    530 U.S. 640 (2000) ................................................................................... 15

10

*Brown v. City of Pittsburgh*

11
    586 F.3d 263 (3d Cir. 2009) ................................................................... 7, 13

12

*Brueswitz v. Wyeth LLC*

13
    562 U.S. 223 (2011) ................................................................................... 16

14

*Bruni v. City of Pittsburgh*
     941 F.3d 73 (3d Cir. 2019) ......................................................................... 7

15

*City of Cleburne v. Cleburne Living Center*

16
    473 U.S. 432 (1985) ................................................................................... 14

17

*Does 1-6 v. Mills*

18
    -- F. Supp. 3d --, 2021 WL 4783626 (D. Me. Oct. 13, 2021) ................... 16

19

*Employment Division, Department of Human Resources of Oregon v. Smith*
    494 U.S. 872 (1990) ................................................................................... 13

20

*FCC v. Fox Television Stations, Inc.*

21
    567 U.S. 239 (2012) ................................................................................... 14

22

*Hill v. Colorado*

23
    530 U.S. 703 (2000) ............................................................................ *passim*

24

*Lamie v. United States Trustee*
    540 U.S. 526, 536 (2015) ............................................................................. 9

25

*Madsen v. Women's Health Center*

26
    512 U.S. 753 (1994) ................................................................................... 10

27

*McCullen v. Coakley*

28
    573 U.S. 464 (2014) ................................................................ 6, 7, 11, 12

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Parents for Privacy v. Barr*
    949 F.3d 1210 (9th Cir. 2020) ................................................................. 13

4

5

*Roman Catholic Dioceses of Brooklyn v. Cuomo*
    141 S. Ct. 63 (2020) ........................................................................... 11

6

*San Jose Christian College v. City of Morgan Hill*
    360 F.3d 1024 (9th Cir. 2004) ................................................................. 13

7

8

*Schenck v. Pro-Choice Network of Western New York*
    519 U.S. 357 (1997) ..................................................................... 11, 12

9

*SEC v. McCarthy*
    322 F.3d 650 (9th Cir. 2003) .................................................................... 9

10

11

*South Bay United Pentecostal Church v. Newsom*
    985 F.3d 1128 (9th Cir. 2021) ................................................................ 16

12

*Stormans, Inc. v. Selecky*
    586 F.3d 1109 (9th Cir. 2009) ................................................................ 17

13

14

*United States v. Williams*
    553 U.S. 285 (2008) ............................................................................ 14

15

16

*Ward v. Rock Against Racism*
    491 U.S. 481 (1989) ............................................................................ 11

17

18

*Winter v. Nat. Res. Defense Council, Inc.*
    555 U.S. 7 (2008) ................................................................................ 4

19

*Zadvydas v. Davis*
    533 U.S. 678 (2001) ............................................................................. 9

20

21

**CONSTITUTIONAL PROVISIONS**

22

United States Constitution
    First Amendment ..................................................................... *passim*

23

24

**STATUTES**

25

California Code of Civil Procedure
    § 527.3 ......................................................................................... 8, 9

26

    § 527.3(b)(1) ..................................................................................... 8
    § 527.3(b)(2) ..................................................................................... 8

27

    § 527.3(e) ........................................................................................ 8

28

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

California Penal Code
  § 7 ................................................................................................................ 5
  § 594.39 .................................................................................................... 1, 3
  § 594.39(a) ............................................................................................... 2, 5
  § 594.39(b) .................................................................................................... 2
  § 594.39(c)(1) ............................................................................................... 3
  § 594.39(c)(2) ............................................................................................... 3
  § 594.39(c)(3) ............................................................................................... 3
  § 594.39(c)(4) ............................................................................................... 3
  § 594.39(c)(6) ............................................................................................... 2
  § 594.39(d) ...................................................................................... 3, 7, 8, 9
  § 594.39(e) .................................................................................................... 3

Stats. 2021, c. 737 (SB 742), eff. Oct. 8, 2021 ................................... *passim*
  § 1 ................................................................................................................ 6
  § 1(a)(9) ...................................................................................................... 11
  § 1(b) ..................................................................................................... 6, 11
  § 4 .............................................................................................................. 11


**OTHER AUTHORITIES**

"Approach", Cambridge Dictionary, available at
  https://dictionary.cambridge.org/us/dictionary/english/approach ........................................... 5

"Approach", Merriam Webster Dictionary, available at https://www.merriam-
  webster.com/dictionary/approach ............................................................................... 5

Christine Kim, *Santa Clarita Authorities Investigate Brazen Attack of 2 Workers at
  COVID-19 Vaccine Clinic*, NBC Los Angeles (Aug. 22, 2021), available at
  https://www.nbclosangeles.com/news/local/santa-clarita-authorities-
  investigate-brazen-attack-of-2-workers-at-covid-19-vaccine-clinic/2677217/ ......................... 2

Jackson Hogan, *Anti-vax protestors heckle Oregon high school kids as they get
  COVID-19 vaccine doses*, The Oregonian (Apr. 30, 2021), available at
  https://www.oregonlive.com/coronavirus/2021/04/anti-vaccine-protesters-
  heckle-oregon-high-school-kids-as-they-get-covid-19-doses.html ....................................... 2

John Aguilar, *"I am angry today": Jeffco's top health official halts mobile
  COVID-19 vaccination clinics after medical staff harassed*, Denver Post (Sept.
  8, 2021), available at https://www.denverpost.com/2021/09/08/jefferson-
  county-covid-vaccine-clinic-halted/ ........................................................................ 2

"Picket", Collins Dictionary, available at
  https://www.collinsdictionary.com/us/dictionary/english/picket .......................................... 7

iv

## <u>TABLE OF AUTHORITIES</u>
**(continued)**

**<u>Page</u>**

"Picket", Merriam Webster Dictionary, available at https://www.merriam-
    webster.com/dictionary/picket ................................................................................. 7

"Provisional Death Counts," https://www.cdc.gov/nchs/covid19/index.htm ................................ 2

Timothy Bella, *"No vaccine!": Woman arrested for allegedly driving through
    vaccination site, nearly hitting workers*, Washington Post (May 27, 2021)
    available at https://www.washingtonpost.com/nation/2021/05/27/covid-
    vaccine-car-protest-tennessee/ ................................................................................. 2

"Tracking Covid in California," https://covid19.ca.gov/state-dashboard/ .................................... 2

Opposition to Plaintiff's Motion for a Preliminary Injunction (1:21-cv-01512-DAD-SAB)

**INTRODUCTION**

Vaccines have played an integral role in helping mitigate the ongoing COVID-19 pandemic.  They have saved thousands of lives, reduced the severity of infection in those who are vaccinated, and helped preserve medical resources.  Despite these clear benefits, the COVID-19 vaccines have raised controversy and drawn protestors to sites where they are administrated.  As recounted in multiple news stories, some protestors have harassed patients seeking vaccines and protests have obstructed access to vaccination sites, even causing some vaccination sites to shut down.

In response to this threat to access to vaccines, the California Legislature enacted SB 742 to balance the First Amendment rights of protestors with the rights of patients seeking to obtain vaccines.  SB 742, codified at California Penal Code section 594.39, imposes a narrow restriction on expressive activity to ensure that those who desire a vaccine are able to obtain one without obstruction or interference.  It solely prohibits knowingly approaching patients, without consent, who are entering or exiting a vaccination site, in order to obstruct, injure, harass, intimidate, or interfere with them.

Plaintiff Right to Life is an anti-abortion organization that offers services and counseling to pregnant women, primarily through outreach to patients at the neighboring Planned Parenthood clinic.  Since the neighboring Planned Parenthood offers vaccination services, Right to Life contends that SB 742 impermissibly restricts its free speech rights and free exercise rights by limiting its staff's expressive activity there.  It further argues the statute is impermissibly vague and violates equal protection.  Right to Life now seeks a preliminary injunction against SB 742.  But it has failed to establish a likelihood of success on its constitutional claims or that an injunction is in the public interest.  This Court should deny injunctive relief.

**BACKGROUND**

**I.   STATUTORY BACKGROUND**

In light of the prior briefing filed with the Court, defendant will provide an abbreviated background here.  As the Court is aware, SB 742 was enacted against the backdrop of the ongoing COVID-19 pandemic, which has taken the lives of nearly 75,000 people in California and over

1

785,000 people nationwide.[1]  Starting at the end of 2020, approved vaccines against COVID-19 have been available, and they have played a critical role in helping limit the spread of COVID-19, lower death rates, and preserve medical resources.  (*See* Liska Decl., Ex. 4, 5, 6.)  But the availability of COVID-19 vaccinations has been a source of considerable controversy.  Across the nation, protests against vaccines have escalated and have shut down vaccination sites, intimidated those present, and obstructed access to sites.[2]  Such incidents have similarly occurred in California: for instance, protestors delayed vaccination administration at a mass vaccine site at Dodgers Stadium and a protestor shut down a clinic in Los Angeles after driving a car into the site and nearly hitting workers.  (*See* Liska Decl., Ex. 1, at p. 2, Ex. 7.)[3]

In order to preserve access to vaccination sites in light of such incidents, the California Legislature passed SB 742.  SB 742 makes it unlawful:

> to knowingly approach within 30 feet of any person while a person is within 100 feet of the entrance or exit of a vaccination site and is seeking to enter or exit a vaccination site, or any occupied motor vehicle seeking entry or exit to a vaccination site, for the purpose of obstructing, injuring, harassing, intimidating, or interfering with that person or vehicle occupant.

Cal. Penal Code § 594.39(a).  A "vaccination site" is defined as a "physical location where vaccination services are provided, including, but not limited to, a hospital, physician's office, clinic, or any retail space or pop-up location made available for vaccination services."  *Id.* § 594.39(c)(6).  Violation of this provision is a misdemeanor punishable by a fine of up to $1000 or imprisonment of no more than six months in county jail.  *Id.* § 594.39(b).

---

[1] "Tracking Covid in California," https://covid19.ca.gov/state-dashboard/ (last accessed Dec. 6, 2021); "Provisional Death Counts," https://www.cdc.gov/nchs/covid19/index.htm (last accessed Dec. 6, 2021).

[2] *See, e.g.*, John Aguilar, *"I am angry today": Jeffco's top health official halts mobile COVID-19 vaccination clinics after medical staff harassed*, Denver Post (Sept. 8, 2021), available at https://www.denverpost.com/2021/09/08/jefferson-county-covid-vaccine-clinic-halted/ (last accessed Dec. 7, 2021); Timothy Bella, *"No vaccine!": Woman arrested for allegedly driving through vaccination site, nearly hitting workers*, Washington Post (May 27, 2021) available at https://www.washingtonpost.com/nation/2021/05/27/covid-vaccine-car-protest-tennessee/ (last accessed Dec. 7, 2021); Jackson Hogan, *Anti-vax protestors heckle Oregon high school kids as they get COVID-19 vaccine doses*, The Oregonian (Apr. 30, 2021), available at https://www.oregonlive.com/coronavirus/2021/04/anti-vaccine-protesters-heckle-oregon-high-school-kids-as-they-get-covid-19-doses.html (last accessed Dec. 7, 2021).

[3] *See, e.g.*, Christine Kim, *Santa Clarita Authorities Investigate Brazen Attack of 2 Workers at COVID-19 Vaccine Clinic*, NBC Los Angeles (Aug. 22, 2021), available at https://www.nbclosangeles.com/news/local/santa-clarita-authorities-investigate-brazen-attack-of-2-workers-at-covid-19-vaccine-clinic/2677217/ (last accessed Dec. 7, 2021).

The statute defines "harassing" as "knowingly approaching, without consent, within 30 feet of another person or occupied vehicle for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with, that other person in a public way or on a sidewalk area." Cal. Penal Code § 594.39(c)(1). In turn, "interfering with" is defined as "restricting a person's freedom of movement." *Id.* § 594.39(c)(2). "Intimidating" is defined as "making a true threat directed to a person or group of persons with the intent of placing that person or group of persons in fear of bodily harm or death." *Id.* § 594.39(c)(3). Finally, "obstructing" is defined as "rendering ingress to or egress from a vaccination site, or rendering passage to or from a vaccination site, unreasonably difficult or hazardous." *Id.* § 594.39(c)(4). The statute clarifies that "[i]t is not a violation of this section to engage in lawful picketing arising out of a labor dispute." *Id.* § 594.39(d). To the extent any provisions are unlawful, SB 742 includes a severability clause. *Id.* § 594.39(e).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Right to Life is a non-profit organization that advocates against abortion and provides services to pregnant women. (Compl., ¶ 11.) This work includes outreach to patients visiting the Planned Parenthood clinic next door to Right to Life's outreach center. (*Id.*, ¶ 28.) Right to Life's staff and volunteers seek to interact with patients by holding signs, offering literature, or starting a conversation. (*Id.* ¶¶ 29-31.) Following the passage of SB 742, Right to Life brought suit against the Attorney General challenging the statute. (*Id.* ¶ 10.) It contends that SB 742 violates its free speech and free exercise rights, violates equal protection, and violates due process because of its vagueness. (*Id.* ¶¶ 86-144.)

Shortly after filing suit, Right to Life filed a motion for a temporary restraining order. (*See* ECF No. 11.) Following a hearing on October 28, 2021, the Court granted a temporary restraining order in part. (*See* ECF No. 22.) It restrained defendant from enforcing "SB 742's prohibition on 'harassing' as that term is defined in California Penal Code § 594.39, as applied to Right to Life and its agents, and facially as to any speaker." (ECF No. 22, at 27). The Court left the remainder of the statute intact since plaintiff had not sufficiently justified its request to enjoin the statute in full. (ECF No. 22, at 26.)

3

1        On October 29, 2021—the day before the Court issued its order on the motion for a

2    temporary restraining order—defendant filed a motion to transfer this case to the Northern

3    District of California, where a similar, earlier-filed challenge to the same statute is currently

4    pending.  (*See* ECF No. 21.)  That motion is now fully briefed.  On November 12, 2021, the

5    parties filed a joint status report pursuant to this Court's October 30, 2021 order proposing a

6    schedule for briefing a motion for a preliminary injunction.  (*See* ECF No. 23.)  In this status

7    report, defendant requested that the Court resolve the pending motion to transfer venue prior to

8    setting a schedule for briefing a motion for a preliminary injunction.  (*Id.*)  Plaintiff disagreed and

9    proposed a schedule to brief the motion for a preliminary injunction.  On November 23, 2021, and

10   before the Court issued any order in response to the joint status report, plaintiff went ahead and

11   filed the instant motion for a preliminary injunction.  (*See* ECF No. 25.)

12                                      **LEGAL STANDARD**

13       A party seeking a preliminary injunction "must establish that he is likely to succeed on the

14   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

15   balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v.*

16   *Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  Alternatively, under Ninth Circuit law, a

17   plaintiff can show "serious questions going to the merits" and that "the balance of hardships tips

18   sharply in the plaintiff's favor."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135

19   (9th Cir. 2011) (citation omitted).  Under this second test, a plaintiff must still show a likelihood

20   of irreparable injury and that the public interest favors injunctive relief.  *Id.* at 1135.  The moving

21   party bears the burden of establishing the test is met and must make a clear showing of

22   entitlement to such relief.  *Winter*, 555 U.S. at 22.

23                                        **ARGUMENT**

24       Plaintiff contends that SB 742 violates its free speech rights, its free exercise rights, its

25   associational rights, equal protection, and due process due to vagueness.  But it has not shown a

26   likelihood of success on any its claims or that further injunctive relief is in the public interest.

27   Should the Court disagree, however, it should continue to limit any injunctive relief to solely the

28

"harassing" portion of SB 742, since plaintiff has not justified—nor appear to have requested—any broader relief.

## I.    PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS

### A.    The Scope of SB 742

SB 742 prohibits "knowingly approach[ing] within 30 feet" of a person or occupied vehicle entering or exiting a vaccination site "for the purpose of obstructing, injuring, harassing, intimidating, or interfering with that person or vehicle occupant."  Cal. Penal Code § 594.39(a). California law defines "knowingly" as "a knowledge that the facts exist which bring the act or omission within" a criminal prohibition.  *Id.* § 7.  In turn, "approaching" is commonly understood as meaning to move or come nearer to someone or something.[4]   Thus, SB 742 narrowly targets one specific activity: moving towards someone, knowing the person is within 30 feet and has not consented to an interaction, for the purpose of intimidating, injuring, interfering with, harassing, or obstructing that person.

As defendant has consistently argued, SB 742 therefore does not prohibit merely being within 30 feet of someone entering or exiting a vaccination site, nor does it prohibit being within 100 feet of a vaccination site.  And much of the activity that plaintiff contends is prohibited under SB 742 is, in fact, permitted.  Plaintiff's staff may stand within 100 feet of the Planned Parenthood next door and within 30 feet of those entering or exiting while praying or holding signs.  (*Cf.* Decl. of John Girardi, ¶¶ 9, 12.)  Staff and volunteers may wear shirts or carry umbrellas with expressive messages within 30 feet of those entering or exiting.  (*Cf. id.* ¶¶ 10, 11.)  They may call out to those passing by or seek to engage them in conversation.  (*Cf. id.* ¶ 13.) They may set up tables with information, offer leaflets or pamphlets to those passing by, or continue a consensual encounter with a patient walking to the clinic.  Nor does SB 742 prohibit simply taking a step towards someone entering or exiting the clinic.  All that SB 742 prohibits is *knowingly* approaching within 30 feet of someone entering or exiting for a prohibited purpose.

---

[4] *See, e.g.*, "Approach", Merriam Webster Dictionary, available at  https://www.merriam-webster.com/dictionary/approach (last accessed Dec. 7, 2021); "Approach", Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/approach (last accessed Dec. 7, 2021).

1    An inadvertent step towards someone in the vicinity is not prohibited, nor is simply passing

2    through the space near the vaccination site.

3          That the Legislature might focus on preventing activists from approaching patients without

4    consent makes sense.  In enacting SB 742, the Legislature was focused on activity that intimidates

5    and obstructs those seeking to access a vaccination site and obtain a vaccine.  *See* Stats. 2021, c.

6    737 ("SB 742"), § 1, eff. Oct. 8, 2021.  As the Supreme Court has recognized, "[p]ersons who are

7    attempting to enter health care facilities—for any purpose—are often in particularly vulnerable

8    physical and emotional conditions."  *Hill v. Colorado*, 530 U.S. 703, 729 (2000).  Prohibiting

9    nonconsensual approaches helps "protect[] these persons from unwanted encounters,

10   confrontations, and even assaults."  *Id.*  It ensures that someone seeking a vaccine need not

11   experience "the harassment, the nuisance, the persistent importuning, the following, the dogging,

12   and the implied threat of physical touching that can accompany an unwelcome approach . . . by a

13   person wishing to argue vociferously face-to-face and perhaps thrust an undesired handbill upon

14   her."  *Id.* at 724.  This concern is particularly heightened given the publicized incidents of

15   harassment and the concerns over transmission of COVID-19.  In contrast, a protestor standing

16   nearby holding a sign or offering a handbill to patients in route to a vaccination site poses a much

17   lower risk of obstructing access or intimidating patients.

18         The Legislature was clear that it was trying to balance the free speech rights of protestors

19   with the right of patients to obtain vaccines, particularly COVID-19 vaccines, free from

20   obstruction.  (*E.g.*, SB 742, § 1(b); Liska Decl., Ex. 1, at p. 1.)  It did so by targeting one narrow

21   segment of expressive activity—approaching unwilling patients to injure, intimidate, harass,

22   obstruct, or interfere with them—that created the risk of obstruction and harassment the

23   Legislature was concerned about.  All other expressive conduct near vaccination sites remains

24   permissible.

25         **B.    Plaintiff Has Not Demonstrated a Likelihood of Success on Its Free Speech
              Claims**

26

27         The First Amendment to the U.S. Constitution protects the right to free expression on

28   public streets and sidewalks.  *E.g.*, *McCullen v. Coakley*, 573 U.S. 464, 477 (2014).  "[T]he

6

guiding First Amendment principle" is that "the 'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Id.* (citation omitted). However, the government has "somewhat wider leeway to regulate features of speech unrelated to its content." *Id.* The government may enact "'reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Id.* (citation omitted). SB 742 is such a reasonable restriction on the time, place, or manner of speech and, consequently, plaintiff has not shown a likelihood of success on the merits of this claim.

### 1.    SB 742 Is Content Neutral

SB 742 is a content neutral statute. Plaintiff gives three arguments for why it is not, but none are availing. First, plaintiff contends that SB 742 is not content neutral because it exempts labor activists. But the provision of the statute that plaintiff cites is hardly as categorical as plaintiff claims. The relevant provision simply clarifies that "[i]t is not a violation of this section to engage in lawful picketing arising out of a labor dispute." Cal. Penal Code § 594.39(d). It plainly does not provide a wholesale exception for labor activists.

This follows from the plain text of the statute. Picketing is not the same thing as knowingly approaching a patient to injure, harass, intimidate, obstruct, or interfere with them. The ordinary meaning of "picketing" is a protest or demonstration, particularly by employees on strike that seek to dissuade others from entering the business they are striking.[5] (*Cf. Bruni v. City of Pittsburgh*, 941 F.3d 73, 86-87 (3d Cir. 2019) (discussing dictionary definitions of "picketing" .) A demonstration or protest, as commonly understood, is not the same thing as knowingly approaching someone for the purposes prohibited by SB 742.

---

[5] *E.g.*, "Picket", Collins Dictionary, available at https://www.collinsdictionary.com/us/dictionary/english/picket (last accessed Dec. 7, 2021); "Picket", Merriam Webster Dictionary, available at https://www.merriam-webster.com/dictionary/picket (last accessed Dec. 7, 2021).

7

1      That picketing is distinct from the conduct prohibited by SB 742 is reinforced by the

2  provision subsection (d) itself cross-references.  California Code of Civil Procedure section

3  527.3(b)(1) provides that it is legal to "giv[e] publicity to, and obtain[] or communicat[e]

4  information regarding the existence of, or the facts involved in, any labor dispute, whether by

5  advertising speaking, patrolling any public street . . . or by any other method not involving fraud,

6  violence or breach of the peace."  In a separate subsection, it also protects "peaceful picketing or

7  patrolling."  Cal. Code Civ. Proc. § 527.3(b)(2).  That the Legislature here has again distinguished

8  information-distribution—which might also include activities within the scope of SB 742—from

9  picketing emphasizes that they are not the same thing.  And section 527.3 makes clear that it is

10  not intended "to permit conduct that is unlawful," *id.* § 527.3(e), which would include the conduct

11  proscribed by SB 742.

12      Moreover, a prior version of SB 742 that prohibited picketing at vaccination sites—which

13  included the provision that plaintiff cites here—included a definition of "picketing."  (Liska

14  Decl., Ex. 1, at 2.)  That version of SB 742 defined "picketing" as "protest activities engaged in

15  by a person within 300 feet of a vaccination site."  (*Id.*)  Given that subsection (d) was part of this

16  version of SB 742, it is proper to assume the Legislature intended "picketing" as used in

17  subsection (d) to carry the same meaning: namely, protest activities.  Again, protest activities are

18  not the same thing as knowingly approaching individuals for the purposes within the scope of SB

19  742.  This reinforces that subsection (d) is not an exemption; it is a clarification that a separate set

20  of activities is not prohibited.

21      This is not to say that there is no overlap between picketing and the conduct prohibited by

22  SB 742.  Rather, picketing is not *identical to* the conduct prohibited under SB 742.  A picket

23  might include conduct within the proscription of SB 742—such as offering leaflets or

24  approaching to talk—but it also includes conduct that is indisputably beyond the scope of SB

25  742—such as standing with a sign or chanting without approaching anyone in particular.  Thus,

26  specifying that *picketing* arising out of a labor dispute is permissible does not automatically mean

27  that *every* action that could be undertaken during a particular strike or demonstration is

28  permissible.  The Legislature intentionally used a different word in subdivision (d), and this Court

1  should give that difference in language meaning.  *See, e.g.*, *SEC v. McCarthy*, 322 F.3d 650, 656

2  (9th Cir. 2003).

3      That the relevant provision is simply a clarification that picketing arising out of a labor

4  dispute is permitted as long as the picketers do not engage in the conduct prohibited by SB 742

5  aligns with the statutory text and drafting history of SB 742.  Had the Legislature wished to create

6  a wholesale exemption for labor activists, they could have easily done so.  For instance, they

7  could have used language as in *American Civil Liberties Union of Nevada v. City of Los Angeles*,

8  466 F.3d 784 (9th Cir. 2006), where the invalid ordinance exempted "*[a]ny conduct* 'arguably

9  protected by the National Labor Relations Act.'"  *Id.* at 789 n. 6 (emphasis added).  Or the

10  Legislature could have simply that "activity undertaken by labor activists engaged in a strike is

11  not a violation of SB 742."  In short, the Legislature had many ways to clearly and explicitly state

12  that labor activists were exempted in whole from SB 742.  But it did not "adopt that ready

13  alternative" language, indicating that it "did not in fact want what [plaintiff] claim[s]."  *Advocate*

14  *Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017).  Instead, the Legislature used

15  the word "picketing" specifically, a word not listed in the prohibitions in SB 742.  This would be

16  an oblique way to carve out any wholesale exception.

17      This reading of the statutory language does not, contrary to the Court's concern, render

18  subsection (d) surplusage.  Including a clarification—particularly to clarify the legality of a type

19  of speech, namely labor picketing, that enjoys express protection under federal and state law after

20  a history of suppression, *see e.g.*, California Code of Civil Procedure § 527.3—is not rendering

21  the provision without any meaning.  But even if it did, the Court's "preference for avoiding

22  surplusage constructions is not absolute."  *Lamie v. United States Trustee*, 540 U.S. 526, 536

23  (2015).  Application of the canon against surplusage to interpret the statute in a way that raises

24  more constitutional concerns would be particularly inappropriate here in light of the constitutional

25  avoidance canon:  since subdivision (d) is at the least ambiguous, this Court should adopt an

26  interpretation that minimizes, not maximizes, constitutional issues.  *E.g.*, *Zadvydas v. Davis*, 533

27  U.S. 678, 690 (2001).

28

1    Nor do plaintiff's other arguments establish that the law is content-based.  Plaintiff argues

2    that SB 742 is not content neutral because it seeks to protect individuals from unwanted

3    encounters.  But this purpose has nothing to do with the content of any speech, including

4    plaintiff's.  Protecting those seeking vaccinations from "unwanted encounters, confrontations, and

5    even assaults," *Hill*, 530 U.S. at 729, does not turn on the nature of the message the approaching

6    speaker seeks to convey.  The concern is not about how *what* a protestor has to say will impact

7    the patient, but rather about the impact of their *action* on the patient.  The Legislature was not

8    concerned that a speaker's *message* would intimidate or harass a patient, but rather that the act of

9    approaching without consent—even if the speaker never ultimately spoke a word—would.  A

10   protestor approaching with a pamphlet to confront someone entering a vaccine clinic creates an

11   unwanted encounter whether that protestor seeks to speak against vaccines, in favor of vaccines,

12   or on any other topic.  And an approaching protestor poses the same risk of spreading COVID-19

13   regardless of her message, a risk that may be particularly concerning to those who are seeking

14   vaccinations and may be unvaccinated.  Because the Legislature was not reacting to the content of

15   any particular speaker's message, SB 742 is therefore not content based.

16   Finally, plaintiffs argue that because the statute prohibits approaching for the purpose of

17   oral protest, education, or counseling—and thus defines speech based on purpose— it is content-

18   based.  This argument was squarely rejected by the Supreme Court in *Hill*, 530 U.S. at 720-723,

19   which held that a Colorado statute prohibiting approaching within eight feet of a person to

20   "engag[e] in oral protest, education, or counseling," *id.* at 707, was content neutral.  Whether or

21   not recent Supreme Court precedent calls into question the underpinnings of the ruling in *Hill*,

22   that case's holding has not been overruled.  As such, it remains binding precedent on this Court.

23   SB 742 is thus a content-neutral statute.

24           **2.    SB 742 Is a Valid Time, Place, and Manner Restriction**

25   As a content-neutral restriction on the location where certain conduct can take place, SB

26   742 can be upheld as a valid time, place, and manner restriction.  Such a restriction is valid when

27   it is "narrowly tailored to serve a significant governmental interest."  *Madsen v. Women's Health*

28

1   *Center*, 512 U.S. 753, 764 (1994) (quoting *Ward v. Rock Against Racism*, 491 U.S. 481, 791

2   (1989)).  The challenged statute here meets this test.

3       SB 742 serves important interests that are compelling.  (*Cf.* ECF No. 22, at 17.)  It was

4   enacted "to protect Californians from infectious diseases by safeguarding their right to access

5   vaccination sites."  SB 742, § 1(b); *see also id.*, §§ 1(a)(9), 4.  As the Supreme Court has

6   recognized, "protect[ing] those who enter a health care facility from the harassment, the nuisance,

7   the persistent importuning, the following, the dogging, and the implied threat of physical touching

8   that can accompany an unwelcome approach" is a significant interest.  *Hill*, 530 U.S. at 724.  So

9   is "[s]temming the spread of COVID-19."  *Roman Catholic Dioceses of Brooklyn v. Cuomo*, 141

10  S. Ct. 63, 67 (2020) (per curiam).

11      In addition, SB 742 is narrowly tailored.  To be narrowly tailored, a regulation "need not be

12  the least restrictive or least intrusive means of" furthering the government's interest.  *Ward*, 491

13  U.S. at 798.  "Rather, the requirement of narrow tailoring is satisfied" when the regulation

14  "'promotes a substantial government interest that would be achieved less effectively absent the

15  regulation.'"  *Id.* at 799 (citation omitted).  SB 742 meets this standard.  As defendant explained

16  in his opposition to a temporary restraining order and incorporates here, SB 742 does not suffer

17  from the fatal flaws of cases such as *McCullen v. Coakley*, 573 U.S. 464 (2014) or *Schenck v.*

18  *Pro-Choice Network of Western New York*, 519 U.S. 357 (1997).  Like the floating buffer zone in

19  *Hill*, SB 742 does not prohibit simply being within 30 feet of a vaccination site or a patient

20  entering or exiting the site.  Plaintiff's staff are free to engage in expressive activity within this

21  zone—such as holding signs, wearing shirts, setting up a table with information, or calling out to

22  those passing—that was prohibited in *McCullen* and *Schenck*.  All that plaintiffs cannot do is

23  knowingly approach a patient without consent.

24      Thus, in contrast to *Schenck* and *McCullen*, plaintiff's staff can engage in the sort of

25  personal conversations they seek to.  Staff members may even do so near the entrance to the

26  vaccination site itself or with patients passing within 30 feet—so long as they do not knowingly

27  approach without consent, threaten, or otherwise obstruct those who seek to enter or exit.

28  Plaintiff can thus easily reach its audience and staff members can initiate peaceful, consensual

1    encounters or hand out leaflets.  Weighed against this limited intrusion is the fact that the State's

2    critical interests in protesting public health and slowing the COVID-19 pandemic would be

3    furthered less effectively in the absence of SB 742.

4          Plaintiff's other arguments as to the tailoring of the statute are unavailing.  The statute is

5    not overly broad because the Legislature has not tried other means of addressing the problem.  The

6    issue in *McCullen* was that Massachusetts had not demonstrated "that alternative measures that

7    burden substantially less speech would fail to achieve the government's interest, not simply that

8    the chosen route is easier."  *McCullen*, 573 U.S. at 495.  The statute in *McCullen* swept in

9    speech—such as sidewalk counseling—that did not pose risks to the government's purposes.

10   Here, in contrast, SB 742 is tailored to specifically target conduct that raises concerns over

11   obstructing access while permitting multiple other avenues of expression.  This permissible

12   conduct includes conduct analogous to sidewalk counseling, namely being near a vaccination site

13   and asking patients passing by, even within 30 feet of the protestor, to engage in conversation or

14   offering them leaflets.  Such conduct was not permissible in *McCullen* or in *Schenck*.  It is here.

15         Nor is SB 742 not narrowly tailored simply because the Legislature cited only one or two

16   incidents of protestors obstructing vaccination sites.  Such incidents have occurred, and continue

17   to occur.  The Legislature could reasonably worry about their continuance and seek to prohibit

18   further such incidents without waiting, hands tied, until they occurred.  There is no reason for the

19   Legislature to suspect any particular incident was a single, one-off event, particularly in light of

20   the ongoing controversy over COVID-19 vaccines.  Rather, the Legislature is permitted to act

21   prophylactically to protect public health.  This critical interest would not be furthered as

22   effectively without the narrow restriction on expressive activity that SB 742 imposes.  The statute

23   is thus narrowly tailored and a permissible time, place, and manner requirement.

24

25

26

27

28

1

### C.   Plaintiff Has Not Demonstrated a Likelihood of Success on Its Free Exercise Claim

2

3   Plaintiff further claims that SB 742 is a violation of its free exercise rights under the First

4   amendment.  But it has not established a likelihood of success on the merits of this claim either.

5   Under *Employment Division, Department of Human Resources of Oregon v. Smith*, 494

6   U.S. 872 (1990), a neutral, generally applicable law is not a violation of the Free Exercise Clause.

7   As explained above, SB 742 does not exempt any speaker from its prohibitions and is a neutral,

8   generally-applicable statute.  (See *supra* at I.B.1.)  Any activist may picket, regardless of the

9   message they speak to convey; no activist, whether for a labor organization or otherwise, may

10  knowingly approach a patient entering or exiting a vaccination site without consent.  Religious

11  speakers are treated no differently under the law than secular speakers.  SB 742 is thus a neutral,

12  generally applicable law and not a violation of the Free Exercise Clause.  *See Brown v. City of*

13  *Pittsburgh*, 586 F.3d 263, 284 (3d Cir. 2009) (holding law creating a 15-foot buffer zone around

14  clinics was a neutral, generally-applicable law that did not violate the Free Exercise Clause).

15  Plaintiff further argues that because this case implicates *both* its free exercise and free

16  speech rights—a so-called "hybrid rights" claim—strict scrutiny is nonetheless appropriate.  As

17  the Ninth Circuit has recognized, "[t]he extent to which the hybrid rights exception truly exists,

18  and what standard applies to it, is unclear."  *Parents for Privacy v. Barr*, 949 F.3d 1210, 1236

19  (9th Cir. 2020).  At the very least, however, there is no "hybrid rights" situation where, as here,

20  plaintiff has not demonstrated a likelihood of succeeding on its other claim.  *E.g.*, *San Jose*

21  *Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1032-1033 (9th Cir. 2004).  As

22  discussed above, plaintiff has not shown a likelihood of success on its free speech claim.  It thus

23  similarly has not shown a likelihood of succeeding on its free exercise claim.  *Cf. Brown*, 586

24  F.3d at 287 (holding that Pennsylvania Religious Freedom Restoration Act "confers on

25  religiously motivated expression the same degree of protection provided by the First Amendment

26  to expression generally").

27

28

13

1

**D.    Plaintiff Has Not Demonstrated a Likelihood of Success on Its Equal Protection Claim**

2

3        Plaintiff next argues that SB 742 likely violates equal protection. This claim, too, is

4   predicated on the alleged exemption for labor expression.  As explained, no such exemption

5   exists.  (*See supra* at I.B.1.)  Rather, plaintiff is treated like any other speaker under SB 742.  (*Id.*)

6   Since the law treats all speakers and activists equally, it is not a violation of equal protection.  *See*

7   *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (Equal Protection

8   "direct[s] that all persons similarly situated be treated alike").

9

**E.    Plaintiff Has Not Demonstrated a Likelihood of Success on Its Due Process Claim**

10

11        Plaintiff further contends that SB 742 is impermissibly vague.  The Supreme Court rejected

12   this precise argument for a nearly-identically worded statute in *Hill*.  *See* 530 U.S. at 732-733.

13   SB 742 is therefore not impermissibly vague

14        A law is impermissibly vague if it "fails to provide a person of ordinary intelligence fair

15   notice of what is prohibited, or is so standardless that it authorizes or encourages seriously

16   discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).  This requires

17   "first, that regulated parties should know what is required of them so that they may act

18   accordingly; second, precision and guidance are necessary so that those enforcing the law do not

19   act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239,

20   253 (2012).

21        As to the first—notice to regulated parties—SB 742 is clear in its prohibition.  Plaintiff's

22   staff may not approach within 30 feet of patients entering or exiting a vaccination site in order to

23   intimidate, harass, injure, obstruct, or interfere with patients.  This clearly delineates what is and

24   is not permitted.  Plaintiff claims this is still too vague, noting that it might be hard to determine

25   whether a particular patient is going to a vaccination site.  For one, this concern is not particularly

26   applicable to plaintiff's personal situation: it will be readily apparent to plaintiff's staff when a

27   patient is entering or exiting the neighboring clinic.  For another, when an activist is near a

28   vaccination site—as most activists seeking to interact with patients such as plaintiff's staff will

14

1    be—it will not be difficult to determine who is entering the site and who is simply passing by.

2    And if an activist wanted to be certain to reach those at a vaccination site, she could simply set up

3    her table near the site entrance—which, as explained above, is not prohibited under SB 742.

4         Plaintiff also contends that the "knowingly approach" standard makes SB 742 too vague for

5    those who will enforce it.  The Supreme Court rejected a similar argument to a nearly identical

6    prohibition in *Hill*.  It noted that the statute's "virtue[]" was its "specificity of the definitions of

7    the zone[]."  530 U.S. at 733.  And it is likely a police officer, as any person, will be able to

8    distinguish between the activist with a sign or leaflet approaching someone entering a vaccination

9    site from the activist walking to stand by the door or a picketer standing stationary.  As the Court

10   held in *Hill*, "'enforcement requires the exercise of some degree of police judgment,' and the

11   degree of judgment involved here is acceptable."  *Id.* (citation omitted).

12        **F.    Plaintiff Has Not Demonstrated a Likelihood of Success on Its Association**
13            **Claim**

14        Finally, plaintiffs contend that SB 742 interferes with their associational rights.  Plaintiff

15   claims that it "expressively associates with the women it engages with" and that SB 742 interferes

16   with this association.  This claim is simply a repackaged assertion of plaintiff's free expression

17   claim, not an assertion of an independent constitutional right.  Plaintiff does not contend it is

18   unable (or required) to form an organization with patients it wishes to interact with or that SB 742

19   otherwise impacts its membership, organizational structure, or message's content.  *Cf. Boy Scouts*

20   *of America v. Dale*, 530 U.S. 640, 647-648 (2000) (discussing the scope of associational rights).

21   Rather, it simply wishes to be able to engage in expressive activity with patients such as having a

22   conversation or distributing a pamphlet.  Plaintiff cites no case recognizing such an expansive

23   view of associational rights.  As such, it has not shown a likelihood of succeeding on this claim,

24   particularly in light of the deficiencies of its free speech claim.

25

26

27

28

1    **II.    A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST**

2        Even if plaintiff can establish that it has a likelihood of success on the merits, it still is not

3    entitled to injunctive relief under the remaining factors.  When the government "is a party to a

4    case in which a [temporary restraining order] is sought, the balance of the equities and the public

5    interest factors merge."  *South Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1149

6    (9th Cir. 2021).[6]  Here, the public interest weighs against a temporary restraining order: SB 742

7    imposes minimal restrictions on plaintiff's expressive activities while serving critical public

8    health purposes.

9        As the Supreme Court has recognized, "the elimination of communicable diseases through

10   vaccination" is "'one of the greatest achievements' of public health in the 20th century."

11   *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 226 (2011).  The story of the COVID-19 vaccines is no

12   different.  Vaccinations are the "gold standard to prevent and stop the spread of communicable

13   diseases, including COVID-19."  *Does 1-6 v. Mills*, -- F. Supp. 3d --, 2021 WL 4783626, at *13

14   (D. Me. Oct. 13, 2021), *aff'd*, 16 F.th 20 (1st Cir. 2021).  "Achieving the high levels of

15   vaccination needed to establish population-level immunity is crucial to protect the health of the

16   most vulnerable individuals in society."  *Id.*  As this Court recognized in its ruling on the

17   temporary restraining order, "[a]vailability and access to the lifesaving COVID-19 vaccines are of

18   paramount importance in this ongoing fight against COVID-19 and to prevent the spread of this

19   highly contagious and lethal virus."  (*See* ECF No. 22, at 25.)

20       The public interest is thus furthered by ensuring that those who wish to receive vaccines—

21   whether for COVID-19 or otherwise—are able to physically access vaccination sites and to do so

22   without harassment, threats, physical assault, or intimidation.  There have been numerous

23   documented instances where protestors and anti-vaccine activists have interfered with and

24   obstructed access to vaccination sites. (*See* Liska Decl., Ex. 1, 7.)  Weighed against this critical

25   public interest is the minimal intrusion on plaintiff's ability to communicate its views.  Under SB

26   742, the restrictions on plaintiff's expressive activities—particularly those which it seeks to

27   _____

28       [6] For this reason, defendant addressed both factors together in tandem, rather than
     separately, in his opposition to a temporary restraining order.

                                                    16

undertake, since plaintiff expresses no desire to threaten, intimidate, or obstruct those entering or exiting vaccination sites—are minimal.  The statute solely prohibits plaintiff's staff from knowingly approaching within 30 feet of those who are within 100 feet of a vaccination site.  It does not prohibit its staff from being within this 100-foot zone and holding signs, offering pamphlets to those passing by, or asking passersby to speak with the staff member, even patients passing within 30 feet.  All the staff may not do is approach a patient without express consent for a prohibited purpose.  In light of this minimal limitation against potentially intimidating non-consensual physical encounters that could obstruct or impair access to life-saving vaccines during a pandemic, the public interest weighs against any injunctive relief.

**III.   WHILE NO ORDER IS WARRANTED, ANY RELIEF SHOULD BE NARROW**

Even if injunctive relief were warranted here (which it is not), any relief would have to be tailored solely to enjoin the portion of SB 742 that is specifically challenged—knowingly approaching a person or occupied vehicle to engage in peaceful oral counseling or education, hand leaflets, or hold a sign.  *Cf.  Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (injunctive relief "must be tailored to remedy the specific harm alleged" ) (citation omitted).

As the Court held in its temporary restraining order, plaintiff has not justified the need for injunctive relief that enjoins the entire statute, rather than SB 742's prohibition on "harassing" only.  (*See* ECF No. 22, at 26-27.)  And in their current preliminary injunction, plaintiff does not appear to even seek an order enjoining the other portions of SB 742.  And, as explained in defendant's opposition to a temporary restraining order and incorporated here, the "harassing" provision of SB 742 is severable from the remainder of the statute.

Therefore, if any relief were warranted here, the Court should solely issue a preliminary injunction with the same scope of the temporary restraining order: enjoining only the "harassing" prohibition of SB 742 while leaving the remainder of the statute intact.

1

**CONCLUSION**

2        Plaintiff has not demonstrated a right to a preliminary injunction, and its motion should be

3   denied.  And even if the Court were to disagree, it should retain the narrow scope of its temporary

4   restraining order and solely enjoin the provision of SB 742 prohibiting knowingly approaching a

5   patient to "harass" them while leaving the rest of the statute intact.

6

7

8

9   Dated:  December 7, 2021                              Respectfully submitted,

10                                                         ROB BONTA
                                                           Attorney General of California
11                                                         ANTHONY HAKL
                                                           Supervising Deputy Attorney General
12                                                         RITA BOSWORTH
                                                           Deputy Attorney General
13

14

15                                                         */s/ Kristin Liska*

16
                                                           KRISTIN A. LISKA
17                                                         Deputy Attorney General
                                                           *Attorneys for Defendant*
18                                                         *Attorney General Rob Bonta*

19

20

21

22

23

24

25

26

27

28

18

**CERTIFICATE OF SERVICE**

Case Name:   ***Right to Life of Central California v. Rob Bonta***

Case No.      **1:21-cv-01512-DAD-SAB**

I hereby certify that on <u>December 7, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1.  **OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

2.  **DECLARATION OF KRISTIN A. LISKA IN SUPPORT OF OPPOSITION**
    **[with EXHIBITS 1-7]**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

This declaration was executed on <u>December 7, 2021</u>, at Concord, California.


<u>      Vanessa Jordan      </u>     <u>   *Vanessa Jordan*   </u>
          Declarant                             Signature